UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| NFINITYLINK COMMUNICATIONS, INC., <br><br>    Plaintiff, <br><br> v. <br><br> THE CITY OF MONTICELLO, KENTUCKY; THE CITY COUNCIL OF THE CITY OF MONTICELLO, KENTUCKY; and COMMUNITY TELECOM SERVICES, <br><br>    Defendants. | CIVIL ACTION NO. 6:20-208-KKC <br><br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the joint partial motion to dismiss filed by Defendants The City of Monticello, Kentucky ("The City"), The City Council of the City of Monticello ("The City Council"), and Community Telecom Services ("CTS") pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim and 12(b)(1) for lack of subject-matter jurisdiction. (DE 10.) For the following reasons, the Court grants the motion.

I.     Background

Plaintiff NFINITYLINK Communications, Inc. constructs communications networks to deliver cable, internet, and phone services to commercial and residential customers. (Compl. ¶¶ 1, 26.) Plaintiff also offers consulting services related to the operation and management of communications networks to other network owners. (*Id.* ¶ 1.) Plaintiff provided consulting services to CTS to assist with the operation of its cable system. (*Id.* ¶ 30.)

Similar to Plaintiff, CTS is a provider of cable, internet, and phone services. (*Id.* ¶ 4.) CTS offers these services to residents of the City, which has authorized CTS to construct the necessary systems in the City's rights of way. (*Id.*) The City and Wayne County, Kentucky jointly own CTS. (*Id.*) Currently, CTS is the sole cable operator serving the City. (*Id.* ¶ 28.)

**A.     Plaintiff's Cable Franchise and License Requests**

On May 21, 2020, CTS's Board of Directors voted to hire a new co-manager who would be responsible for replacing the services that Plaintiff was providing to CTS. (*Id.* ¶ 35.) The next day, Plaintiff formally requested a cable television franchise through a letter to the City. (*Id.* ¶ 36.) The Board of Directors held a special meeting with Plaintiff on May 28, 2020, during which the Board voted to formally and immediately terminate the consulting relationship between Plaintiff and CTS. (*Id.* ¶¶ 37-40.) On July 27, 2020, Plaintiff sent a follow up letter to the City, giving additional details regarding its cable franchise request. (*Id.* ¶ 45.)

Plaintiff's franchise request was an agenda item for the City Council meeting on August 10, 2020. (*Id.* ¶ 47.) In considering Plaintiff's request, Greg Latham, the City Clerk and CTS's Chairman of the Board of Directors, gave a presentation to the City Council about the prior relationship between CTS and Plaintiff. (*Id.* ¶¶ 49-51.) Latham allegedly asked the City Council to reject Plaintiff's request, explaining that he did not want Plaintiff to compete with CTS. (*Id.* ¶ 52.) The City Council did not invite comment from Plaintiff before voting on Plaintiff's franchise request and ultimately voted to deny the request. (*Id.* ¶¶ 58-66.) During the same City Council meeting, the City approved an agreement between the City and CTS to allow CTS to install wireless antennas on a City-owned water tower to provide wireless internet service. (*Id.* ¶ 48.)

After the City Council denied Plaintiff's franchise request, Plaintiff asked Latham about the requirements for obtaining a license to occupy the City's rights of way to provide non-cable services. (*Id.* ¶ 71.) Latham responded that the City would not issue Plaintiff such a license without a cable franchise. (*Id.* ¶ 72.)

Thereafter, Plaintiff sent another letter to the City that asked it to reconsider its denials of Plaintiff's requests for a cable franchise and a license to occupy the City's rights of way. (*Id.* ¶ 73.) The City did not respond to Plaintiff's letter. (*Id.* ¶ 74.) On September 10, 2020, Plaintiff requested that the City allow Plaintiff to be heard on its franchise request at the next City Council meeting, but the City denied the request. (*Id.* ¶¶ 75-76.) To date, Plaintiff claims that it never had the opportunity to address the City Council and that the City never provided a reason for denying Plaintiff's franchise request. (*Id.* ¶¶ 80-81.)

**B.     Plaintiff's Equipment**

At the May 28, 2020 meeting where CTS terminated its consulting relationship with Plaintiff, Plaintiff asked CTS to return the equipment that Plaintiff had purchased and installed to operate CTS's cable system. (*Id.* ¶ 41.) CTS indicated that it would return the equipment the following week. (*Id.* ¶ 42.) According to Plaintiff, CTS has never returned the equipment. (*Id.* ¶ 44.)

**C.     Procedural History**

On October 14, 2020, Plaintiff filed a complaint for declaratory and injunctive relief against Defendants, claiming violations of the Sherman Act and Kentucky state antitrust laws and alleging that Defendants are engaging in a conspiracy to maintain CTS's monopoly over the cable market. (*Id.* ¶¶ 119-168.) Plaintiff also claims that the City and the City Council violated the 1992 Cable Act ("Cable Act") and 1996 Telecommunications Act ("Telecommunications Act"). (*Id.* ¶¶ 87-118.) Plaintiff specifically requests a declaratory

3

judgment finding that Defendants' actions violated these respective statutes and an injunction requiring the City to grant Plaintiff's request for a cable franchise. (*Id.* at p. 26-27.) Additionally, Plaintiff asserts conversion and trespass to chattels claims against CTS. (*Id.* ¶¶ 169-176.)

Defendants filed a joint partial motion to dismiss on November 20, 2020. (DE 10.) Defendants seek to dismiss the federal and state antitrust claims against them, arguing that *Parker* immunity bars these claims. (*Id.* at 5-7.) CTS further argues that the Court lacks supplemental jurisdiction over the conversion and trespass claims against it. (*Id.* at 8-9.)

## II. Analysis

### A. Standard of Review

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a complaint states a claim for the relief sought, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 753 (6th Cir. 2020) (citations and quotation marks omitted).

1.  *Parker* Immunity

    a.  **Application of *Parker* Immunity to Federal Antitrust Claims**

Under the *Parker* immunity doctrine[1], states and state officials are immune from liability for federal antitrust claims brought under the Sherman Act. *See Parker v. Brown*, 317 U.S. 341, 350-51 (1943). The Supreme Court most recently discussed *Parker* immunity in the municipality context in *Federal Trade Commission v. Phoebe Putney Health System, Inc.*, 568 U.S. 216 (2013). As explained in *Phoebe Putney*, *Parker* immunity does not automatically apply to the actions of municipalities and their agents[2] "[b]ecause municipalities and other political subdivisions are not themselves sovereign." 568 U.S. at 225. Thus, *Parker* immunity only applies to the actions of municipalities and their agents if they are acting "pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition." *Id.* at 226 (quoting *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 52 (1982)). A sufficient state policy exists if the displacement of competition was a "foreseeable result" of the actions that the state policy authorizes. *Id.* at 226-27. Displacement of competition is foreseeable when the anticompetitive effects are "the inherent, logical, or ordinary result of the exercise of authority delegated by the [state]." *Id.* at 229. But displacement of competition is not foreseeable if the state takes a merely neutral position regarding the allegedly anticompetitive actions. *Id.* at 228. However, the clear articulation test does not require the state legislature to "'expressly state'" that it "'intends for the delegated action[s] to have anticompetitive effects.'" *Id.* at 226 (quoting *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 43 (1985)). Instead, the municipalities or their agents

---

[1] *Parker* immunity is also known as "state-action" immunity.
[2] Parties do not appear to dispute that the City Council and CTS are municipal agents for the purposes of *Parker* immunity. Therefore, the Court will analyze the applicability of *Parker* immunity to the actions of Defendants altogether.

5

must show that the state has delegated authority to them to act anticompetitively. *Id.* at 228.

To support their argument that *Parker* immunity shields their allegedly anticompetitive actions from liability for the federal antitrust claims brought against them, Defendants cite to the Sixth Circuit's decision in *Consolidated Television Cable Service, Inc. v. City of Frankfort*, 857 F.2d 354 (6th Cir. 1988). (DE 10 at 6.) Parties do not dispute the virtually indistinguishable factual similarities between *Consolidated* and the instant case. (*See* DE 10 at 6; DE 13 at 6.) In *Consolidated*, a private cable television provider brought federal antitrust claims against the City of Frankfort, the city's Electric and Water Plant Board, and a city-owned cable provider after the city denied the private provider's requests to utilize city-owned poles for cable services. 857 F.2d 354 at 355-56. The Sixth Circuit ultimately found that *Parker* immunity extended to the defendants' actions because Kentucky law contains "a 'clearly articulated and affirmatively expressed' state policy to allow municipal regulation of the provision of [cable television] service, and, foreseeably, to displace competition." *Id.* at 359-60.

However, parties dispute whether *Consolidated* remains good law. (DE 13 at 6-11.) Plaintiff maintains that it does not because (1) the Supreme Court's decision in *Phoebe Putney* overturned *Consolidated*; and (2) the Cable Act and the Telecommunications Act preempt any contrary state policy and thus, supersede *Consolidated*. (*Id.*) Defendants disagree. (DE 14 at 1-4.) Plaintiff further contends that, in any event, *Parker* immunity does not apply because Defendants were acting as "market participants" in denying Plaintiff's franchise and license requests. (DE 13 at 12-13.) The Court addresses these arguments in turn.

### i. Impact of *Phoebe Putney* on *Consolidated*

Plaintiff argues that the Sixth Circuit's reasoning in *Consolidated* depended on the Eleventh Circuit's "loose application" of the clear articulation test that the Supreme Court later rejected in *Phoebe Putney*. (DE 13 at 9-11.) The Eleventh Circuit found that, under *Parker*, the displacement of competition was a "foreseeable result" of a state policy when the state legislature could have "reasonably anticipated" that anticompetitive conduct would occur as a result of the policy. *Phoebe Putney*, 568 U.S. at 223 (citing *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 663 F.3d 1369, 1376 (11th Cir. 2011) (quotation marks omitted)). According to the Eleventh Circuit, the anticompetitive effect did *not* need to be "one that ordinarily occurs, routinely occurs, or is inherently likely to occur as a result of the empowering legislation." *Id.* (citation and quotation marks omitted). The Supreme Court ultimately reversed the Eleventh Circuit, instead finding that a state policy meets the clear articulation test if "the displacement of competition was the inherent, logical, or ordinary result of the exercise of authority delegated by the [state]." *Id.* at 229.

In contrast to Plaintiff's suggestion otherwise, the Sixth Circuit did not apply the Eleventh Circuit's version of the clear articulation test in *Consolidated*, nor did the Sixth Circuit even reference a similar standard. *Consolidated*, 857 F.2d at 359-61. *Phoebe Putney* merely affirmed and clarified, rather than overturned, existing precedent, finding that displacement of competition is foreseeable when it is the "inherent, logical, or ordinary result" of a state policy. *Phoebe Putney*, 568 U.S. at 229.

In finding that Kentucky law contains a "clearly articulated and affirmatively expressed" state policy that foreseeably displaces competition, the Sixth Circuit in *Consolidated* analyzed *Parker* immunity consistent with *Phoebe Putney*. *Consolidated*, 857 F.2d at 359-61. The applicable state policy is found in Sections 163 and 164 of the Kentucky

7

Constitution and Kentucky Revised Statute ("KRS") § 96.010. *Id* at 360-61. Section 163 of the Kentucky Constitution provides:

> No street railway, gas, water, steam heating, telephone, or electric light company, within a city or town, shall be permitted or authorized to construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus along, over, under or across the streets, alleys or public grounds of a city or town, without the consent of the proper legislative bodies or boards of such city or town being first obtained[.]

Ky. Const. § 163. Put more simply, the provision "grants municipalities the authority and responsibility to control the entry of public utilities into the municipal marketplace by requiring such utilities to obtain a franchise before they can operate within a municipality." *Hopkinsville Cable TV, Inc. v. Pennyroyal Cablevision, Inc.*, 562 F. Supp. 543, 546 (W.D. Ky. 1982). While not explicitly mentioned in the statute, the Kentucky Supreme Court has held that Section 163 includes cable television systems. *Id.* (citing *City of Owensboro v. Top Vision Cable Co.*, 487 S.W.2d 283, 287 (Ky. 1972)). Relatedly, Section 164 places limits on the length of the franchises that municipalities grant and gives municipalities "the right to reject any or all bids" when granting franchises. Ky. Const. § 164. In turn, KRS § 96.010 sets forth the requirements that a municipality must fulfill in granting a franchise. *See* Ky. Rev. Stat. Ann. § 96.010(1). A municipality does not have to fulfill these requirements "if . . . the city owns or desires to own and operate a municipal plant to render the required service." *Id.* § 96.010(2).

In *Consolidated*, the Sixth Circuit found that, as a result of the clearly articulated and affirmatively expressed state policy derived from these provisions, "[the] displacement of competition in the provision of [cable television] service . . . is a foreseeable result of granting the city power to franchise public utilities or own and operate a municipal plant." *Consolidated*, 857 F.2d at 361. Kentucky law is "not neutral" and "clearly contemplates" the

8

anticompetitive conduct alleged. *Id.* at 360. This analysis aligns with that set forth (and further clarified) by the Supreme Court in *Phoebe Putney*.

Moreover, the state policy relied upon in *Consolidated* still sufficiently confers *Parker* immunity on Defendants, even after *Phoebe Putney*. Displacement of competition is the "inherent, logical, or ordinary result" of the City's constitutional authority to reject bids by cable television providers for franchises and to control which cable television providers may obtain franchises to operate within the municipality. *Phoebe Putney*, 568 U.S. at 229. Displacement of competition is also the "inherent, logical, or ordinary result" of the City's statutory authority to operate its own plant to provide cable television. *Id.* In this way, Kentucky has "delegated authority to [the City and its agents] to act . . . anticompetitively." *Id.* at 228.

Plaintiff additionally argues that the Kentucky Supreme Court recently characterized the state policy implicated in *Consolidated* "quite differently." (DE 13 at 10.) Plaintiff accordingly cites to *Kentucky CATV Ass'n v. City of Florence*, 520 S.W.3d 355 (Ky. 2017). In that case, the Kentucky Supreme Court explained, "Evident within the [d]ebates concerning Sections 163 and 164 is the framers' desire to protect the citizens of a municipality from a city council infiltrated by business interests and whose objective is to profit, at the expense of the public, through perpetual monopolies and backroom dealings." *Kentucky CATV*, 520 S.W.3d at 360. Thus, Plaintiff claims that the state policy is instead "intended to protect *against* anticompetitive monopolies and 'backroom dealings.'" (DE 13 at 10 (emphasis in original).) However, Plaintiff misconstrues this passage. The framers' concern seemingly originated from those perpetual monopolies created by *private corporations*, rather than those created by *municipalities*. As the court confirms in the same opinion, "[T]he guiding themes behind the enactment of Sections 163 and 164 were: 1) municipal control; and 2)

9

municipal benefit via the sale of franchises." *Kentucky CATV*, S.W.3d 355 at 361. This state policy of municipal control over the provision of public utilities is entirely in harmony with the state policy that the Sixth Circuit identified in *Consolidated*.

Therefore, in denying Plaintiff's franchise and license requests, Defendants were acting pursuant to a clearly articulated and affirmatively expressed state policy to displace competition under Kentucky law. Thus, *Parker* immunity applies to Defendants' actions, and Defendants are not liable for the federal antitrust claims brought against them.

### ii.  Impact of Subsequent Federal Law on *Consolidated*

At the outset, the Court notes that Plaintiff has not cited to a single case finding that the Cable Act or the Telecommunications Act overrides any grant of immunity under *Parker*. The Court recognizes that the Cable Act and the Telecommunications Act contain express preemption provisions. *See* 47 U.S.C. § 253(d) ("If . . . the [Federal Communications] Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) [of the immediate provision], the Commission shall preempt the enforcement of such statute, regulation, or legal requirement[.]") (Telecommunications Act); 47 U.S.C. § 556(c) ("[A]ny provision of law of any State, political subdivision, or agency thereof, or franchising authority, or any provision of any franchise granted by such authority, which is inconsistent with this chapter shall be deemed to be preempted and superseded.") (Cable Act). However, the Court cannot conclude that "a municipality should incur antitrust liability simply for contravening some *unrelated* federal statute," especially in the absence of any authority indicating otherwise. *Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.*, 956 F. Supp. 896, 904 (D. Kan. 1996) (examining similar preemption argument) (emphasis added). Indeed, "[v]iolations of . . . the federal Cable Act or Telecommunications Act should be pursued as just that—violations of

10

independent federal statutes. Such violations should not also neutralize a municipality's immunity to federal antitrust law." *Id.* Therefore, the Court cannot conclude that the Cable Act and the Telecommunications Act supersede *Consolidated* and thus, will not deprive Defendants of their *Parker* immunity on that basis.

### iii. Application of the Market Participant Exception to *Parker* Immunity

Finally, Plaintiff argues that *Parker* immunity does not apply to the actions of Defendants because they were acting as "market participants" when denying Plaintiff's franchise and license requests. (DE 13 at 12-13.) Defendants respond that such an exception does not apply in this case. (DE 14 at 5-7.)

The Supreme Court has merely acknowledged the *possible* existence of a market participant exception to *Parker* immunity in the municipality context. *See Phoebe Putney*, 568 U.S. at 226 n.4; *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 379 (1991) ("We reiterate that, with the possible market participant exception, *any* action that qualifies as state action is *ipso facto* . . . exempt from the operation of the antitrust laws.") (emphasis in original) (citation and quotation marks omitted). To the extent that Plaintiff relies upon the Supreme Court's opinion in *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 574 U.S. 494 (2015) to support its assertion that "the Supreme Court then formally adopted and applied the market-participant exception in 2015," Plaintiff's representation is misleading. (DE 13 at 12.) In *North Carolina State Board*, the Court held that

> "[a] nonsovereign actor controlled by active market participants . . . enjoys *Parker* immunity only if it satisfies two requirements: first that the challenged restraint . . . be one clearly articulated and affirmatively expressed as state policy, and second that the policy . . . be actively supervised by the State."

574 U.S. at 503-04 (citations and quotation marks omitted). Here, the Court did not adopt a market participant exception to *Parker* immunity but instead, concluded that, subject to

11

these two requirements, *Parker* immunity *still* applies to actors controlled by market participants. *See id.* Further, *North Carolina State Board* involved antitrust claims brought against a state regulatory agency comprised of private actors, unlike the instant case, which involves claims brought against a municipality and its agents. *Id.* at 499. As the Court itself confirmed in *North Carolina State Board*, the "active supervision" requirement does not apply to municipal actors. *See id.* at 507-08.

The Sixth Circuit similarly recognized the possibility of a market participant exception in *VIBO Corporation, Inc. v. Conway*, 669 F.3d 675 (6th Cir. 2012). In that case, the Sixth Circuit explained, "[I]f a state acts as a 'commercial participant in a given market,' action taken in a market capacity is not protected. Thus, 'with the possible market participant exception, *any* action that qualifies as state action is *ipso facto* exempt from the operation of the antitrust laws.'" *VIBO*, 669 F.3d at 687 (quoting *Omni*, 499 U.S. at 379) (emphasis in original). In those circumstances, "[a] state is a market participant when it acts 'in a proprietary capacity as a purchaser or seller with regard to the challenged action' or its actions 'constitute[ ] direct state participation in the market.'" *Id.* (quoting *Huish Detergents, Inc. v. Warren Cnty.*, 214 F.3d 707, 714-15 (6th Cir. 2000) (discussing the market participation exception in the context of the Commerce Clause)). Notably, however, the Sixth Circuit concluded that the market participant exception did not apply. *Id.* And the court examined the possible exception as applied to corporations, not to municipalities. *Id.* at 686-87.

This Court is not aware of any federal District Court or Court of Appeals that has applied the market participant exception to nullify *Parker* immunity and reestablish antitrust liability against a municipality and its agents. *See, e.g., Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 61 (2d Cir. 2010) ("While the possibility of a market participant

12

exception is left open in [*Omni*], the trial record does not support its application here."); *Hedgecock v. Blackwell Land Co.*, 52 F.3d 333, 1995 WL 161649 (Table), at *2 (9th Cir. 1995) ("While a commercial participant exception to *Parker* might be appropriate in circumstances where an arm of the state enters a market in competition with private actors . . . , such is not the case here."); *AmeriCare MedServices, Inc. v. City of Anaheim*, Case No. 8:16-cv-1596-JLS-AFMx, 2017 WL 1836354, at *10 (C.D. Cal. Mar. 28, 2017) ("Moreover, in the present case, the City Defendants' provision of emergency ambulance services does not implicate the exception."); *In re Recombinant DNA Tech. Pat. & Cont. Litig.*, 874 F. Supp. 904, 912 (S.D. Ind. 1994 ("Thus, even were we inclined to apply a market participant exception to *Parker* immunity, the facts of this particular case would not warrant its application."); *see also W. Star Hosp. Auth. Inc. v. City of Richmond*, 986 F.3d 354, 360 (4th Cir. 2021) ("The Supreme Court has never recognized such an exception; in fact, it has suggested only that it might possibly exist. . . . Nor have *any* of the Courts of Appeals ever concluded that this proposed exception frustrates the invocation of state action immunity[.]") (emphasis in original). Absent definitive guidance from the Supreme Court or the Sixth Circuit, this Court declines to apply the market participant exception to this case. Therefore, Defendants are immune from antitrust liability under *Parker*, and no other exception applies. The Court accordingly dismisses those claims.

### b. Application of *Parker* Immunity to State Antitrust Claims

Plaintiff argues that *Parker* immunity does not apply to its *state* antitrust claims against Defendants because it is a doctrine based on federalism. (DE 13 at 13-14.) Both Kentucky state courts and federal district courts in Kentucky have analyzed Kentucky state antitrust claims under the same framework as federal antitrust claims. *See Conrad v. Bevin*, No. 3:17-CV-00056-GFVT, 2018 WL 988071, at *8 (E.D. Ky. Feb. 16, 2018). Accordingly, for

the reasons given above, *Parker* immunity also applies to the state antitrust claims against Defendants, and those claims are also dismissed.

**B.      Supplemental Jurisdiction over Conversion and Trespass Claims**

Parties do not dispute that this Court still retains subject-matter jurisdiction over the Cable Act and the Telecommunications Act claims in this matter because those claims present federal questions. (Compl ¶¶ 5-6; DE 10 at 8.) However, parties disagree about whether the Court has supplemental jurisdiction over the state conversion and trespass claims against CTS pursuant to 28 U.S.C. § 1367(a). (Compl. ¶ 7; DE 10 at 8-9.)

"Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Ashland Hosp. Corp. v. Int'l Brotherhood. of Elec. Workers Loc. 575*, 807 F. Supp. 2d 633, 638 (E.D. Ky. 2011). A district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'" *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (quoting *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996)).

The Court declines to exercise supplemental jurisdiction over Plaintiff's state conversion and trespass claims against CTS because those claims do not form part of the same case or controversy as the remaining federal claims. The federal and state claims do not derive from common underlying facts. The Cable Act and the Telecommunications Act claims arise out of the City's and the City Council's denials of Plaintiff's requests for a cable franchise and a license to occupy the City's rights of way. The conversion and trespass claims arise out of CTS's alleged failure to return Plaintiff's equipment following the dissolution of the pre-existing consulting relationship between Plaintiff and CTS. Therefore, the federal

14

claims and state claims "require proof of different facts, will involve different witnesses, and apply different law." *Raymer v. W. and S. Life Ins. Co.*, Civil Action No. 5:13-cv-00042, 2013 WL 4875029, at *3 (E.D. Ky. Sept. 11, 2013). Accordingly, the Court dismisses Plaintiff's state conversion and trespass claims against CTS. Because those are the sole remaining claims against CTS, the Court likewise dismisses CTS as a party to this action.

### III. Conclusion

The Court hereby ORDERS as follows:

1. The joint partial motion to dismiss (DE 10) brought by Defendants The City of Monticello, Kentucky, The City Council of the City of Monticello, Kentucky, and Community Telecom Services is GRANTED;

2. Counts III (violation of 15 U.S.C. §1), IV (violation of 15 U.S.C. § 2), V (violation of Kentucky Revised Statute § 367.175(1)), and VI (violation of Kentucky Revised Statute § 367.175(2)) are DISMISSED with prejudice;

3. Count VII (conversion and trespass to chattels) is DISMISSED without prejudice; and

4. Defendant Community Telecom Services is DISMISSED as a party to the action.

Dated May 24, 2021

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY